IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARKEMA INC.,**<br>　　　　　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**MAVIRO CATALYST, INC.,**<br>　　　　　　　　**Defendant.** | CIVIL ACTION<br><br><br><br>NO.  24-6130 |

### MEMORANDUM OPINION

Plaintiff Arkema Inc. ("Arkema") produces specialty materials, adhesives, and coatings that are "widely used in the manufacture of personal care and household products." It operates a facility in Texas that "reacts propylene (hydrocarbon gas) with air to produce acrylic acid" to be used in those products. Defendant Maviro Catalyst, Inc. ("Maviro"), meanwhile, is an industrial services company that performs "catalyst changeout services" for "large tubular reactor[s]" operated by companies like Arkema.[1]

In 2017, Arkema and Maviro entered into an agreement— the "Master Plant Services Agreement" (the "MPSA")—for work to be performed at Arkema's Texas facility. Maviro alleges, however, that Arkema breached the MPSA and owes it "over three million additional dollars." Arkema disagrees, arguing that it "has paid all amounts on approved and timely submitted change orders" made pursuant to the MPSA. In November 2024, Arkema filed the above-captioned action seeking a declaratory judgment "to have the parties' obligations under [the] MPSA" clarified "to resolve the existing contract[ual] dispute." But a month later, Maviro filed a competing breach of contract lawsuit against Arkema in the Southern District of Texas

---

[1] In layman's terms, Arkema analogizes the "catalyst changeout" process "to someone performing an oil change on [a] car."

1

based on that same dispute.

Maviro now moves to dismiss the above-captioned action for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) respectively.[2] Alternatively, it moves to transfer the venue of this action to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a).

For the reasons set forth below, Maviro's Motions shall be denied.

## I.    RULE 12 MOTIONS

### A.    Timeliness

At the outset, Arkema contends that Maviro's Rule 12 Motions are untimely, and therefore, waived pursuant to Federal Rules of Civil Procedure 12(g)(2) and (h)(1)(A). Rule 12(g)(2) provides: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(1)(A) states: "A party waives any defense listed in Rule 12(b)(2)-(5) by omitting it from a motion in the circumstances described in Rule 12(g)(2)."

To that end, Arkema submits that, by the Parties' Stipulation and Order of this Court, Maviro had until January 9, 2025, to respond to its Original Complaint. But Maviro's only response to that Complaint was a Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), which did not raise any Rule 12(b) defenses. Instead, Maviro first asserted those defenses in response to Arkema's Amended Complaint, the filing of which, argues Arkema, does not "revive the right to present by motion defenses that were available but were not asserted in timely

---

[2] In its brief, Maviro moves to dismiss the Amended Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(1). That Rule, however, pertains to subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), so the Court will construe Maviro's Motion as one brought under Rule 12(b)(2), which concerns personal jurisdiction, *see* Fed. R. Civ. P. 12(b)(2).

fashion prior to the amendment of the pleading." *Chan v. Cnty. of Lancaster*, 2012 WL 4510776, at *13 (E.D. Pa. Sept. 28, 2012) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1388).

That argument is unavailing, however, as the proposition in the case cited by Arkema is inapposite. In *Chan*, the defendants sought to dismiss several disability discrimination claims alleged in the plaintiff's Second Amended Complaint. *Id.* However, those claims were also pleaded in the Original and First Amended Complaint, and the defendants did not previously seek their dismissal in prior Rule 12 Motions. *Id.* Because the defendants challenged those claims only after plaintiff filed her Second Amended Complaint, they were found to have waived the ability to assert any defense to them under Rule 12(g). *Id.*

But here, Maviro did not file a Rule 12 Motion in response to Arkema's Original Complaint. Instead, it brought a Venue Transfer Motion pursuant to 28 U.S.C. § 1404(a). Therefore, Maviro did not waive its Rule 12(b)(2) and (b)(3) arguments, because, as the *Chan* Court noted, Rule 12(g) "generally precludes [defendants from] asserting available defenses in successive motions *brought pursuant to Rule 12*." *Id.* at *13 n.35 (emphases added). And regardless, "[a] court, in its discretion, may excuse the requirements of Rule 12(g)." *Id.* at *13 n.34 (citing *Penn-Mont Benefit Services, Inc. v. Crosswhite*, 2003 WL 203570 (E.D. Pa. Jan. 29, 2003)). Accordingly, Maviro's Rule 12 Motions will be considered.

### B.  Legal Standard

Rule 12(b)(2) provides that a claim may be dismissed for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction," which is a threshold matter that must be resolved before considering the merits of the pleadings. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007); *see also Small v. Camden Cnty.*, 728 F.3d 265, 270 (3d Cir. 2013). A plaintiff is required to establish a

3

*prima facie* case by demonstrating with "reasonable particularity sufficient contacts between the defendant and the forum state." *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987). While this burden is not a heavy one, a plaintiff may not "rely on the bare pleadings alone" and must "respond with actual proofs, not mere allegations." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). In so doing, a plaintiff is entitled to have all allegations taken as true and factual disputes resolved in their favor. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018). Allegations that "are no more than conclusions," however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Rule 12(b)(3) provides that a claim may be dismissed for improper venue. Fed. R. Civ. P. 12(b)(3). The purpose of venue, in most instances, "is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (internal quotation omitted). "Because improper venue is an affirmative defense, the burden of proving lack of proper venue remains—at all times—with the defendant." *Great Western Min. & Mineral Co. v. ADR Options, Inc.*, 434 F. App'x 83, 86 (3d Cir. 2011); *Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982). In evaluating Rule 12(b)(3) motions, all well-pleaded allegations set forth in the operative complaint must be accepted as true. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

If venue is deemed defective, 28 U.S.C. § 1406(a) authorizes courts to either dismiss the action, or "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.*; *see also Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007) (explaining framework). "Dismissal is considered to be a harsh remedy . . . and transfer of venue

to another district court in which the action could originally have been brought, is the preferred remedy." *Anderson v. TransUnion, LLC*, 2018 WL 334495, at *1 (E.D. Pa. Jan. 9, 2018) (citations omitted).

### C. Discussion

#### i. *Personal Jurisdiction*

Maviro contends that it is not subject to personal jurisdiction in the Eastern District of Pennsylvania because it "lacks minimum contacts with the forum state" such that "maintaining this suit will offend traditional notions of fair play and substantial justice." Arkema counters that Maviro "waived any right to contest" personal jurisdiction and "raise it as a defense" when it specifically agreed in the MPSA to "submit[] itself to the jurisdiction" of courts in this judicial district.

It is well established that personal jurisdiction is a waivable right. *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). This means that litigants can give "'express or implied consent to personal jurisdiction' . . . through a 'variety of legal arrangements,' including forum selection clauses in contracts executed by the parties." *Skold v. Galderma Lab'ys, L.P.*, 99 F. Supp.3d 585, 605 (E.D. Pa. 2015) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). In such cases, courts "need only determine the validity and effect of the forum selection clause to find that a defendant has consented to personal jurisdiction." *Sam Mannino Enters., LLC v. John W. Stone Oil Distrib., LLC*, 26 F. Supp.3d 482, 485 (W.D. Pa. 2014) (citation omitted); *see also Polytek Dev. Corp. v. 'Doc' Johnson Enters.*, 532 F. Supp.3d 243, 251 (E.D. Pa. 2021) ("[T]he existence of a valid forum selection clause means that the Defendant consented to personal jurisdiction . . . within the Eastern District of Pennsylvania."). "Because questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature . . . federal law applies in diversity

cases" to such questions. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995).

Under federal law, a forum selection clause is "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). The resisting party bears a "heavy burden" in challenging the validity of such clauses, challenges which require more than a showing of mere "inconvenience or additional expense." *Provident Mut. Life Ins. Co. of Philadelphia v. Bickerstaff*, 818 F. Supp. 116, 118 (E.D. Pa. 1993) (citations omitted). Rather, the resisting party must establish that the complained-of clause: (1) was "the result of fraud or overreaching"; (2) "that enforcement would violate strong public policy of the forum"; or, (3) "that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator*, 709 F.2d 190, 202 (3d Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989).

Here, the MPSA includes a forum selection clause and choice-of-law provision, which states:

> This Agreement shall be governed by and shall be interpreted and construed in accordance with the laws of the Commonwealth of Pennsylvania without giving effect to the conflicts of laws principles thereof. Any action brought by or on behalf of Contractor arising out of the transactions covered hereunder shall be institution in the appropriate state or federal court located in Montgomery County, Pennsylvania or the United States District Court for the Eastern District of Pennsylvania, and Contractor further submits itself to the jurisdiction of said courts in the event Arkema elects to institute any action in said courts.

Maviro sole argument against enforceability is that it "served notice of its election to void" the clauses under Tex. Bus. & Com. Code § 272.001. That statute, in relevant part, provides:

> If a construction contract or an agreement collateral to or affecting the construction contract contains a provision making the contract or agreement or any conflict arising under the contract or agreement subject to another state's law, litigation in

>   the courts of another state, or arbitration in another state, that provision is voidable[3] by a party obligated by the contract or agreement to perform the work that is the subject of the construction contract.

*Id.* § 272.001(b). Because Section 272.001 was enacted to reflect Texas's public policy that disputes involving "projects constructed in Texas [shall] be decided in Texas, under Texas law," *see* Senate Res. Ctr., Bill Analysis, 2017 TX S.B. 807 (NS), 85th Leg. (Jun. 7, 2017), Maviro argues that enforcing the MPSA's forum selection clause would be unreasonable, as it would "disarm Texas contractors . . . from invoking the protections that the State of Texas enacted to safeguard the local contractor from the foreign forum selection."

But Maviro's reliance on Texas law is misplaced, as the enforceability of a forum selection clause in a diversity action is governed by federal law—*not* state law.[4] *See Jumara*, 55 F.3d at 877; *cf. Marshall v. Marshall*, 547 U.S. 293, 314 (2006) (explaining that the jurisdiction of federal courts "cannot be defeated by the extraterritorial operation of a state statute"). And under federal law, the proper inquiry at this stage is whether such a clause would "contravene a strong public policy of *the forum in which suit is brought*." *M/S Bremen*, 407 U.S. at 15 (emphases added). Thus, it is the public policy of Pennsylvania—not Texas—that should be considered.

Undeterred, Maviro waves at Pennsylvania's Contractor and Subcontractor Payment Act ("CASPA"), 43 P.S. § 501 *et seq.*, for the proposition that it is the strong policy of Pennsylvania, like Texas, to "shield contractors" from "litigating in-state construction issues in foreign states

---

[3] "A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance." Restatement (Second) of Contracts § 7. "A claim that a contract is voidable does not challenge the existence or *prima facie* validity of the underlying agreement, but charges that inequitable conduct associated with the formation or performance of the agreement renders it *unenforceable* at the election of the aggrieved party." *PLAC, Inc. v. Lamb*, 2016 WL 5417790, at *6 (Pa. Super. Aug. 17, 2016) (citations omitted) (emphases added).

[4] This Court has diversity jurisdiction to entertain Arkema's claims pursuant to 28 U.S.C. § 1331, as Arkema and Maviro are citizens of different states and the amount in controversy exceeds $75,000.

7

based on forum-selection clauses." *See id*. § 514 ("Making a contract subject to the laws of another state or requiring that any litigation, arbitration or other dispute resolution process on the contract occur in another state, shall be unenforceable."). Counter to that argument are at least two district courts which have determined that "the policies underlying CASPA do not represent a compelling public policy interest of Pennsylvania." *KNL Const., Inc. v. Killian Const. Co.*, 2014 WL 1671959, at *3 (M.D. Pa. Apr. 28, 2014); *see also Whiting-Turner Contracting Co. v. Westchester Fire Ins. Co.*, 2013 WL 3177881, at *4 (D. Md. June 20, 2013) (same). The *Whiting-Turner Contracting Co.* Court, for instance, concluded that CASPA did not bar the enforcement of a forum selection clause mandating that litigation be conducted in Maryland— even though the dispute at issue concerned a construction project in Pennsylvania—because, among other reasons, "Pennsylvania courts routinely enforce forum-selection clauses requiring litigation in *its* state courts" in cases where the dispute had no connection whatsoever to Pennsylvania. *Id.* (citing *Patriot Commercial Leasing Co. v. Kremer Rest. Enters., LLC*, 915 A.2d 647, 650-51 (Pa. Super. 2006)). That trend renders it "illogical" to argue that Pennsylvania has a compelling public interest in negating forum selection clauses to give effect to statutes like Tex. Bus. & Com. Code § 272.001. *KNL Const., Inc.*, 2014 WL 1671959, at *3. If anything, "it would be *consistent* with the public policy of [Pennsylvania] to enforce the forum selection clause in order to give force to the parties' agreement." *Feldman v. Google, Inc.*, 513 F. Supp.2d 229, 247 (E.D. Pa. 2007) (citing *Jumara*, 55 F.3d at 880) (emphasis added).

      Accordingly, Maviro has failed to carry its "heavy burden" of establishing that the MPSA's forum selection clause is unreasonable and unenforceable. *See Bickerstaff*, 818 F. Supp. at 118. Having consented to the personal jurisdiction of this forum, Maviro cannot now disclaim it. Accordingly, its Rule 12(b)(2) Motion shall be denied.

### ii.   *Venue*

Next, Maviro moves to dismiss this action pursuant to Rule 12(b)(3) for improper venue. Venue is proper, among other locations, in "a judicial district in which any defendant resides[.]" 28 U.S.C. § 1391(b)(1).  To that end, a corporate defendant, like Maviro, shall be deemed to reside in any judicial district in which it is subject to the Court's personal jurisdiction with respect to the action in question.  *Id.* §§ 1391(c)(2), (d).

Here, as set forth above, Maviro is subject to this Court's personal jurisdiction under the MPSA's forum selection clause.  Therefore, it resides in this judicial district, making venue proper pursuant to 28 U.S.C. § 1391(b)(1).  Accordingly, its Rule 12(b)(3) Motion shall be denied.

## II.   VENUE TRANSFER MOTION

Alternatively, Maviro moves to transfer the venue of this dispute to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a).  That statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  *Id.*  "When deciding motions to transfer, courts in the Third Circuit consider private and public interest factors which stretch beyond those enumerated in §1404(a)."  *Stewart v. First Student, Inc.*, 639 F. Supp.3d 492, 498 (E.D. Pa. 2022) (citing *Jumara*, 55 F.3d at 879).   Private interest factors include:

> [1] [P]laintiff's forum preference as manifested in the original choice, [2] the defendant's preference, [3] whether the claim arose elsewhere, [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted).  Meanwhile, public interest factors include:

> [1] [T]he enforceability of the judgment; [2] practical considerations that could

9

      make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted). The party seeking transfer "bears the burden of persuasion*.*" *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018).

      "In the face of a valid forum selection clause," as is the case here, that framework is modified so that only the public interest factors are weighed. *Id.* (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62-64 (2013)).[5] In so doing, the Supreme Court has cautioned that consideration of the public interest factors "will rarely defeat a transfer motion." *Atl. Marine*, 571 U.S. at 64. "[T]he practical result," therefore, "is that forum-selection clauses should control except in unusual cases." *Id.* at 66; *see also In re McGraw-Hill*, 909 F.3d at 58 ("In all but the most unusual cases, the parties will be held to their bargained-for choice of forum." (citation and internal quotation marks omitted)).

      Here, Maviro identifies three public interest factors that, in its view, weigh in favor of transfer to the Southern District of Texas: practical considerations that could make the trial easy, expeditious, or inexpensive (factor two); the local interest in deciding local controversies at home (factor four); and, the familiarity of the trial judge with the applicable state law in diversity cases (factor six).

      Evaluating each argument in turn, factor two focuses on issues of judicial economy and considers whether transfer would limit the "'wastefulness of time, energy and money' that results

---

[5] Maviro argues that the private interest factors should still be analyzed because the MPSA's forum selection clause is permissive, not mandatory. Citing the Third Circuit's opinion in *Wall v. Corona Capital, LLC*, 756 F. App'x 188, 191 (3d Cir. 2018), Maviro contends that, following *Atlantic Marine*, the presence of a permissive forum selection clause permits courts to consider both the public *and* private interest factors. But, *Atlantic Marine*, as an unreported case is not precedential. And, even if it were the question before the Third Circuit there concerned the "issue of whether the forum selection clause [is] mandatory or permissive" is a "significant factor in a *forum non conveniens* analysis"—an analysis not at issue in this action. *See id.* (citing *Atl. Marine*, 571 U.S. at 64).

10

from 'two cases involving precisely the same issues simultaneously pending in different District Courts.'" *Stewart*, 639 F. Supp.3d at 501 (quoting *Cont'l Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960)). Maviro submits that judicial economy is best served by transferring this case to the Southern District of Texas to avoid the risk of duplicative proceedings and inconsistent rulings; to gain access to local technical expertise and special masters, which will allow for more efficient evidence handling and witness coordination; and, to reduce travel costs and expenses. But those considerations do not weigh in favor of transfer. First, "the mere possibility of inconsistent results does not compel transfer." *Landau v. Viridian Energy PA LLC*, 274 F. Supp. 3d 329, 337 (E.D. Pa. 2017). This is especially the case given that Arkema initiated the above-captioned action *before* Maviro filed the competing action in the Southern District of Texas. *See id.* at 332 ("Under the first-filed rule, when two courts possess the same case at the same time, 'the court which first has possession of the subject must decide it.'" (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)).

Next, although the Court is "not unsympathetic to Defendants' argument that proceeding in two separate fora may result in inconvenience" or additional costs, the parties "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation" by explicitly agreeing in the MPSA to litigate these claims in Pennsylvania. *PeopleStrategy, Inc. v. Hearthstone Advisors LLC*, 2020 WL 12769054, at *2 (E.D. Pa. June 1, 2020) (citing *Atl. Marine*, 571 U.S. at 64); *see also Williams v. Rent 2 Own Trailers, LLC*, 2025 WL 409659, at *4 (E.D. Pa. Feb. 4, 2025) ("[M]ere convenience is a private interest factor that is waived under a valid forum selection clause."). Thus, factor two does not favor transfer.

Proceeding to factor four, Maviro argues that the Southern District of Texas has more of

an interest in deciding a controversy about a local construction contract than the Eastern District of Pennsylvania. It maintains, among other things, that there is a "local interest in regulating construction safety at Texas chemical plants," as demonstrated in Chapter 53 of the Texas Property Code, and a "community interest in industrial facility operations," which impacts the "rights and payment protections of Texas workers." On one hand, this factor could favor transfer "since the central facts of the case occurred there[.]" *Dariz v. Republic Airline, Inc.*, 377 F. Supp.3d 499, 505 (E.D. Pa. 2019). But, as explained above, "it would be consistent with the public policy" and local interests of Pennsylvania "to enforce the forum selection clause in order to give force to the parties' agreement." *Feldman*, 513 F. Supp.2d at 247 (E.D. Pa. 2007) (citing *Jumara*, 55 F.3d at 880). Therefore, factor four is neutral.

Finally, Maviro contends that the Court in the Southern District of Texas will be more familiar with the applicable law governing its contractual dispute with Arkema, which, in Maviro's estimation, is Texas law. But the plain language of the MPSA provides that it "shall be governed by and shall be interpreted and construed in accordance *with the laws of the Commonwealth of Pennsylvania* without giving effect to the conflicts of laws principles thereof." Thus, factor six does not weigh in favor of transfer, because it is Pennsylvania law—not Texas law—that will dictate this dispute, since courts in this judicial district typically "honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994).

\*   \*   \*   \*

In sum, factors two and six do not weigh in favor of transfer, while factor four is neutral. Therefore, on balance, the public interest factors do not support transferring the venue of this action to the Southern District of Texas under 28 U.S.C. § 1404(a). Accordingly, Maviro's

Motion to Transfer Venue shall be denied.

An appropriate order follows.

                                                                  **BY THE COURT:**

                                                                  **S/ WENDY BEETLESTONE**

                                                                  **WENDY BEETLESTONE, J.**